Submitted on record and briefs July 2, 1981,
affirmed February 8, 1982

FIRST STATE BANK OF OREGON,
*Respondent,*
*v.*
MEADOW LAKE STABLES, INC. et al,
*Defendants,*
SMALLWOOD et al,
*Respondents,*
ERLANDSON et ux,
*Appellants.*

(No. 35760, CA 19185)

640 P2d 662

Ralf H. Erlandson and Patricia A. Erlandson, Aurora, filed the brief pro se for defendants Erlandson.

James K. Gardner, Hillsboro, filed the brief for respondents Roy J. Smallwood and Connie L. Smallwood, Clarence C. Wickware and Clara R. Wickware, Jimmy D. Elliott and Jane Doe Elliott, and James Foster and Louwana Foster.

Terry G. Hannon, Virgilia S. Culver, and Gleason, Scarborough, Trammell & Hannon P.C., Gresham, filed the brief for respondent First State Bank of Oregon.

Before Buttler, Presiding Judge, and Joseph, Chief Judge, and Warren, Judge.

BUTTLER, P. J.

**BUTTLER, P. J.**

Appellants appeal from a decree of foreclosure. We review *de novo* and affirm.

In January, 1970, Daniel and Margie Durham executed a mortgage to the State of Oregon covering some 115 acres in Yamhill County. That mortgage is a first lien on the property subject to this proceeding and is not at issue here.

In 1970, Durham and appellant Ralf Erlandson formed Meadow Lake Stables, Inc., and Ralf Erlandson acquired a one-half interest in the 115 acres. In 1970, Meadow Lake Stables, Inc., borrowed $30,000 from A. C. Wherry and Emma L. Wherry and executed a second mortgage[1] on approximately 62 of the 115 acres to secure the payment of that amount. The note was guaranteed by Ralf H. Erlandson, who subsequently acquired the legal title and transferred it to his wife, Patricia. Between 1972 and 1974, the 62 acres was subdivided, and all but one of the parcels were sold under land sale contracts, subject to the mortgage, to defendants Moyer, Vereecken, Freeman, Smallwood, Wickware, Elliott and Foster. The remaining parcel, the smallest of the group, was retained by appellants.

Of appellants' four assignments of error, only one warrants discussion: whether the amount of plaintiff's judgment, including costs and attorney fees, should have been prorated among the individual tracts according to acreage or should have been paid first from the sale of the vendor's retained land, with the remaining balance charged against each of the other parcels in inverse order of their alienation, until the judgment is satisfied. The doctrine of inverse order of alienation is an equitable one related,

---

[1] The Wherrys, as trustors, transferred their note and mortgage to plaintiff, as trustee. Plaintiff foreclosed when it discovered that appellants were in default on their mortgage payments.

The trial court held that plaintiff was entitled to a judgment against appellants in the sum of $41,000, together with attorney fees and costs, and that the mortgage be foreclosed. The decree further provided that the amount of the judgment, costs and attorney fees be prorated Among individual parcels based on acreage, together with post-judgment interest.

somewhat loosely, to marshalling of assets. The general rule has been adopted in Oregon. *Oliver v. Wright,* 47 Or 322, 327-28, 83 P 870 (1905). There are, however, exceptions and qualifications. For example, in *Portland T. & S. Bank v. Lincoln Realty Co.,* 180 Or 96, 127-28, 170 P2d 568 (1946), the court recognized that where the property first alienated was transferred without consideration, the rule might not apply.

■ Although we have not found other Oregon cases in point, the few reference works on the subject mention numerous exceptions and qualifications, some of which relate to the parties' intent and some to equitable defenses. One such qualification, applicable here, is that the right to invoke this equitable doctrine, as a general proposition, belongs to the earlier or earliest grantee, who may use it only to protect himself, not to the grantors-debtors, such as appellants here. *See, e.g.,* Annot., 131 ALR 4, 110-11 (1941); 53 Am Jur 2d, *Marshalling Assets,* § 78 (1970).[2]

■ One of the earliest grantees, defendant Moyer, who did not appear in this court, requested proration of the judgment debt according to acreage. The other grantees and plaintiff did not object. Appellants, the grantors-debtors, are the only parties urging that the property be sold in inverse order of alienation. As we indicated above, the rule has its qualification. There may be circumstances where the debtor may be able to show substantial prejudice if the rule is not invoked and where equity would be served by doing so even if the alienees oppose it. No such showing has been made here,[3] and those parties who could invoke the rule have not done so.

Affirmed. Costs to respondents.

---

[2] This qualification appears to incorporate the equitable defense of "unclean hands." A grantor-debtor, who has caused foreclosure of the paramount mortgage for failure to pay, has unclean hands as to the grantees.

[3] Because appellants have not demonstrated any prejudice in their brief, we will not search the record or exercise our imagination to determine whether appellants are prejudiced, and if so, how.